**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DIGITECH INFORMATION SYSTEMS, INC.,**

        **Plaintiff,**

**-vs-**                                                **Case No.  6:10-cv-1373-Orl-28KRS**

**BMW AUTO LEASING, LLC,**
**BMW FINANCIAL SERVICES NA, LLC,**

        **Defendants.**

## ORDER

The instant patent infringement controversy involves a method and apparatus for selecting leases to optimize investment portfolios. Specifically, the patent at issue describes the following actions: (1) calculating the rate of return on individual leases based on a number of different variables, (2) selecting leases with a high rate of return, and (3) using the selected lease to create lease-backed financial instruments.

Plaintiff Digitech Information Systems, Inc. ("Digitech") sued BMW Auto Leasing, LLC ("BMW AL") and BMW Financial Services NA, LLC ("BMW FS"), alleging infringement of the patent at issue. BMW AL now moves for dismissal of the claims against it on the ground that this Court lacks personal jurisdiction over BMW AL. Having considered all of the papers filed by the parties and the evidence presented, BMW AL's motion must be granted.[1]

---

[1] The motions presently before the Court include: (1) BMW AL's Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction (Doc. 26), (2) Digitech's Memorandum of Law in Opposition to Defendant BMW AL's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction (Doc. 30), and (3) BMW AL's

**Background**

Defendant BMW AL is a Delaware limited liability company with its principle place of business located in New Jersey. (Doc. 26-3 at 1). BMW AL has no employees and no physical assets. (*Id.* at 3). BMW AL is not registered to do business in Florida and does not own any land or interest in any land in Florida. (*Id.*). Rather, BMW AL is a "Special Purpose Vehicle" organized for the express purpose of acquiring and transferring interests in specific financial transactions. (*Id.* at 2). Defendant BMW FS is a Delaware limited liability company that services BMW vehicle leases and arranges for the issuance of notes that are secured by select BMW vehicle leases.[2] (*Id.*).

Tyler Weight, an employee of BMW FS who has personal knowledge of the business of BMW AL, provided the following description of BMW AL's role in acquiring and transferring assets. (*Id.*). First, when a BMW vehicle is leased by an end customer, title to the vehicle and the lease are transferred to a Delaware trust referred to as the Financial Services Trust. (*Id.*). BMW Manufacturing L.P. serves as the trust's beneficiary. (*Id.*). "When a securitization is to be done, BMW [AL] obtains a beneficial interest in the leases to be securitized from BMW Manufacturing L.P." (*Id.*). BMW AL's interest in the secured leases is referred to as a "Special Unit of Beneficial Interest" or "SUBI." (*Id.*). BMW AL then transfers the SUBI to a new trust created for the security offering. (*Id.*).

---

Reply in Further Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction, (Doc. 34).

[2] The Complaint and the evidence of record include no further information regarding the corporate structure of BMW FS and BMW AL or the relationship between the two companies.

In connection with the securitization of leases that occurred in 2010, a new trust was created.[3] (*Id*.). This trust, called the BMW Vehicle Lease Trust 2010-1, issued the notes that were offered to investors. (*Id*.). BMW AL is named as the Transferor on Securities Exchange Commission ("SEC") filings made in connection with this security offering. (*Id*.). BMW AL's role as the transferor is described in the Prospectus and Prospectus Supplement for the 2010 offering. (*Id*. at 4; Doc. 26-4 at 119).

On September 15, 2010, Digitech filed a one-count Complaint against BMW FS and BMW AL, alleging infringement of United States Patent No. 7,739,180 ("the '180 patent").[4] (Doc. 1). In the Complaint, Digitech asserts that both BMW FS and BMW AL conduct business and infringe the '180 patent within the Middle District of Florida. (*Id*. ¶¶ 3, 4, 10). While BMW FS responded to the Complaint by filing an Answer and Counterclaim, BMW AL filed the present Motion to Dismiss arguing that this Court lacks personal jurisdiction over BMW AL. (Docs. 25, 26). BMW AL maintains that it has no contracts with Florida and is not involved in BMW FS's selection of leases for securities offerings. (Doc. 26). In response, Digitech contends that the activities of BMW FS in Florida should be imputed to BMW AL for purposes of establishing personal jurisdiction.[5] (Doc. 30).

**Analysis**

---

[3] The declaration of Mr. Weight states that BMW AL plays "no role is the selection of leases to be securitized." (Doc. 26-3 at 3).

[4] The '180 patent covers a method and apparatus for selecting leases to optimize an investment portfolio by calculating the rate of return on individual leases based on a number of different variables, selecting leases with a high rate of return, and using the selected lease to create lease backed financial instruments. (Doc. 1-1 at 23).

[5] BMW AL sought and was granted leave to file a reply to Digitech's response in opposition to the present Motion to Dismiss. (Docs. 32, 33). To date, Digitech has not requested an evidentiary hearing or leave to conduct jurisdictional discovery.

In patent cases, Federal Circuit law governs questions of personal jurisdiction where, as here, the jurisdictional question at issue is "'intimately involved with the substance of patent laws.'"[6] *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Under Federal Circuit law, where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *accord Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (finding that once a plaintiff alleges sufficient facts supporting the exercise of personal jurisdiction under a long-arm statute, "the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." (quotation omitted)).

---

[6] In *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995), the Federal Circuit found that "[t]he jurisdictional issue presented by an out-of-state patentee is no less intimately involved with the substance of the patent laws than that of an out-of-state accused infringer. Consequently, the instant case . . . presents a question of Federal Circuit law." *Id*. at 1543. Here, the question of personal jurisdiction involves an accused infringer, BMW AL. Accordingly, Federal Circuit law applies.

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate due process. *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)). In analyzing a forum state's long-arm statute, the Federal Circuit defers to that state's interpretations of the long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). However, "when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (internal citations omitted).

The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: (1) general jurisdiction under section 48.193(2), Florida Statutes, and (2) specific jurisdiction under section 48.193(1), Florida Statutes. The relevant provisions of section 48.193 identifying acts that may subject a defendant to jurisdiction read as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > (b) Committing a tortious act within this state. . . .[7]

---

[7] Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for purposes of establishing personal jurisdiction. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1314 (S.D. Fla. 2006); *Adstep, Inc. v. Freeman Decorating Co.*, No. 3:02 CV 1002 J 21HTS, 2003 WL 25276323, at *5 (M.D. Fla. Sept. 16, 2003).

-5-

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193, Fla. Stat. Digitech contends that the Florida long-arm statute reaches BMW AL under both the general jurisdiction provision and the specific jurisdiction provision. The Court will address each contested jurisdictional provision in turn.

**I. General Jurisdiction, Section 48.193(2), Florida Statutes**

Digitech maintains that the evidence of record demonstrates that this Court may exercise general jurisdiction over BMW AL as a result of BMW AL's own activities in Florida as well as the activities of BMW FS. (Doc. 30 at 9). Specifically, Digitech maintains that "BMW FS's contacts with Florida can and should be imputed to BMW [AL]." (*Id.* at 10). Digitech's arguments are without merit.

"It is well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction." *Enic, PLC v. F.F. South & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (citations omitted); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."). However, a corporation that engages in substantial activity in Florida through a subsidiary may be subject to personal jurisdiction in Florida. *Universal Caribbean Establishment v. Bard*, 543 So. 2d 447, 448 (Fla. 4th DCA 1989). In order "[t]o determine whether a foreign corporation is liable based on a subsidiary's substantial activity, [courts] consider the ownership of the subsidiary, the business activities of the subsidiary, and the financial relationship between the corporation and the subsidiary."

-6-

*Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275-76 (11th Cir. 2005) (citing *Meier*, 288 F.3d at 1272-73).

What is required for jurisdiction based on the relationship between a parent corporation and a subsidiary "is not *some* control but '*operational* control' by the parent over the subsidiary." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1344 (S.D. Fla. 2002) (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 856 (Fla. 4th DCA 1998); *see also Dev. Corp. of Palm Beach v. WBC Constr., L.L.C.*, 925 So. 2d 1156, 1161-62 (Fla. 4th DCA 2006)("The amount of control exercised by the parent must be high and very significant.").

> A substantial body of Florida law makes clear that it is only where a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs, that jurisdiction over the parent exists. Sharing some officers and directors, having a unified or 'global' strategy and goals, cross-selling in promotional materials, and performing services for one another is not sufficient to satisfy this test[.]

*Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1146 (Fla. 3d DCA 2007). Thus, "[j]urisdiction over the foreign corporation will not be exercised based on the subsidiary's local activities where the subsidiary carries on its own business and preserves some independence from the foreign corporation." *Abramson*, 132 F. App'x at 276 (citing *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir.2000)); *Capital One Fin. Corp. v. Miller*, 709 So. 2d 639, 640 (Fla. 2d DCA 1998) ("[T]he presence of a subsidiary corporation within Florida is not enough, without more, to subject a non-Florida parent corporation to long-arm jurisdiction within Florida.").

In the present case, the factual assertions of the Complaint and the evidence presented relating to the corporate structure of BMW AL and BMW FS are insufficient to subject BMW AL to Florida's

general long-arm jurisdiction based on the activities of BMW FS.[8] The Complaint itself does not contain any factual allegations regarding the corporate structure of BMW FS or BMW AL. Additionally, the Complaint does not contain any factual allegations regarding the relationship between these companies. In fact, the only jurisdictional facts of record relevant to the issue of corporate relatedness include the following: (1) BMW FS is the Managing Member of BMW AL, and (2) signatories for BMW FS also serve as signatories for BMW AL on documents filed with the SEC.[9] Digitech offers no further factual assertions or evidence of corporate relatedness between BMW FS and BMW AL. On the other hand, the uncontested evidence of record supports a finding that BMW FS and BMW AL operate as separate and distinct corporate entities. The declaration of Tyler Weight, states that BMW AL plays only a limited role in accepting SUBIs from BMW Manufacturing L.P. and transferring the SUBIs to a trust created for a security offering. (Doc. 26-3). In addition, BMW AL submitted public documents filed with the SEC stating that BMW AL's limited liability agreement

---

[8] While Digitech does not allege any particular corporate relationship between BMW FS and BMW AL, Digitech failed to set forth a *prima facie* case that either company exerted the requisite level of operational control over the other. In fact, Digitech failed to set forth any argument or evidence to support a finding that BMW AL, the foreign corporation, exerted operational control over BMW FS.

[9] Digitech cites *Meier* to support its argument that BMW FS's contacts with Florida should be imputed to BMW AL for purposes of establishing personal jurisdiction. (Doc. 30 at 7). In *Meier*, the Eleventh Circuit held that Bahamian corporations were subject to Florida's general personal jurisdiction in a personal injury lawsuit by a minor who was struck by a Bahamian hotel's commercial motorboat. *Id.* at 1272. The *Meier* court found that the Bahamian corporations' Florida subsidiaries, which solicited and coordinated reservations, advertising and marketing, provided day to day accounting services, purchased goods for the Bahamian corporations' hotel, and had significant financial ties to the Bahamian corporations, acted as the agents of the Bahamian corporations, subjecting the foreign corporations to Florida's jurisdiction. *Id.* at 1272-73. The facts in *Meier* are readily distinguishable from the present action, as Digitech has offered little evidence of corporate relatedness.

requires extensive corporate separateness and restricts BMW AL to these transfer functions and related activities. (Doc. 26-4 at 119). Thus, even accepting the uncontroverted allegations in the Complaint as true and resolving all factual conflicts in the affidavits in Digitech's favor, Digitech failed to demonstrate that BMW AL exerted the level of "operation control" over BMW FS that is required to establish general personal jurisdiction over BMW AL.[10] *See Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1159-62 (Fla. 4th DCA 2006) (concluding that a foreign parent corporation which shared at least one officer with its subsidiary; which had authority to approve some expenditures of its subsidiary; which had to approve the purchase or sale by its subsidiary of any asset valued in excess of $25,000; which had to approve the purchase of vehicles by its subsidiary; which audited its subsidiary on an annual basis and reported the subsidiary's profits and losses on a consolidated financial statement; which processed its subsidiary's payroll; and which represented its relationship with its subsidiary as a "joint venture," stating in a website article that it was acting through a subsidiary, was not engaged in substantial business activity in this state within

---

[10] To the extent Digitech asserts that BMW AL's own contacts with Florida are sufficient to establish personal jurisdiction under section 48.193(2), Florida Statutes, this argument is not supported by the record. Digitech presents no specific factual allegations or evidence to support a finding that BMW AL itself had any contact with Florida. Instead, the Complaint merely presents a conclusory assertion that BMW AL is "doing business throughout the United States and within this Judicial District." (Doc. 1 ¶ 3). In its response to the present motion, Digitech argues without any evidentiary support that BMW AL's recent "nationwide securities offer is, of course, also directed to residents of Florida." (Doc. 30 at 10). However, even assuming the securities offering was directed to Florida residents, this offering alone would be insufficient to establish general jurisdiction under section 48.193(2). *See Consolidated Dev.*, 216 F.3d at 1293 ("We decline to find that by offering bonds and debentures in the United States, several years before this action was filed, [defendant] exhibited the sort of systemic business contracts with the forum that are consistent with the assertion of general personal jurisdiction. As we noted . . . where a foreign corporation does not engage in general business in the forum, simply negotiating a contract there will not support general in personam jurisdiction."). On the other hand, the factually uncontested declaration of Mr. Weight supports a finding that BMW AL does not have any specific contacts with Florida. (Doc. 26-3).

the meaning of section 48.193(2) because the parent did "not exert sufficient control over [the subsidiary] to justify jurisdiction"); *Faro Techs., Inc. v. Cimcore Corp.*, No. 6:05-CV-1702-ORL-31JGG, 2006 WL 1119223, at *5 (M.D. Fla. Apr. 27, 2006) (rejecting a claim that a Delaware parent corporation with two Florida subsidiaries was doing business in this state where the parent existed solely to hold stock in the subsidiaries; the parent and subsidiaries shared common officers and at least one director; the chief financial officer of both subsidiaries, with the assistance of subsidiary employees, prepared the parent's tax returns because the parent had no employees of its own; one subsidiary paid for work performed for the parent by subsidiary employees; and one subsidiary provided office space for the parent, rent free). Accordingly, Digitech failed to establish a *prima facie* case for general personal jurisdiction section 48.193(2).

## II. Specific Jurisdiction, Section 48.193(1), Florida Statutes

In the alternative, Digitech asserts that the Court may exercise specific jurisdiction over BMW AL based on BMW AL's tortious conduct and business activity within the state of Florida. Digitech's arguments are not well-taken.

### A. Tortious Conduct, Section 48.193(1)(b), Florida Statutes

Section 48.193(1)(b), Florida Statutes, provides for specific jurisdiction in Florida where the defendant has committed a tortious act, such as patent infringement, within the state of Florida.[11] In the present case, the Complaint asserts that BMW AL infringed, contributed to the infringement, and induced the infringement of the '180 patent within the Middle District of Florida. (Doc. 1 ¶¶ 10, 11).

---

[11] Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for purposes of establishing personal jurisdiction. *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009).

However, BMW AL submitted the declaration of Tyler Weight and attached exhibits refuting Digitech's assertion that BMW AL engaged in any activity within the state of Florida, including any activity relating to the method or apparatus claimed in the '180 patent. (Docs. 26-3, 26-4). In response, Digitech argues that BMW AL acted in concert with BMW FS in the selection and securitization of leases, and that BMW AL's role in this process is sufficient to constitute patent infringement or inducement of patent infringement. (Doc. 30 at 12).

To prevail on a claim of patent infringement under 35 U.S.C. § 271(a), a patentee must establish by a preponderance of the evidence that the accused product or process infringes one or more claims of the patent. *Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009). Inducement of infringement under 35 U.S.C. § 271(b) requires proof that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006).

Here, each claim of the patent at issue, the '180 patent, claims either (1) a method of selecting leases that explicitly includes a step of "selecting a lease based on the rate of return," or (2) "[a]n apparatus for facilitating a selection of leases" that also explicitly involves "selecting a lease based on the rate of return." (*See* Doc. 1-1). The Complaint alleges, in a conclusory fashion, that BMW AL infringes and actively induces others to infringe the '180 patent within the Middle District of Florida. (Doc. 1 ¶¶ 10, 11). However, the Complaint offers no further factual allegations relating to BMW AL's alleged infringement or inducement of infringement,[12] and Digitech has offered no evidence to rebut the evidence submitted by BMW AL demonstrating that: (1) BMW AL's activities are limited

---

[12] Notably, the Complaint does not contain any specific factual allegations relating to the actual selection of leases by either BMW FS or BMW AL.

-11-

to receiving and transferring of SUBIs and related activities; (2) BMW AL is not involved with BMW FS's selection of leases for securitization; (3) BMW AL is not involved with any other parties' selection of leases; and (4) BMW AL and BMW FS are separate and distinct corporate entities.[13] Thus, in light of the complete absence of evidence contradicting the record evidence that BMW AL does not, in Florida or otherwise, engage in any activity related to the method claimed in the '180 patent, including the selection of leases, or knowingly induce a third party to do the same, Digitech has failed to make a *prima facie* showing of personal jurisdiction under section 48.193(1)(b).

Even assuming section 48.193(1)(b) extended far enough to cover BMW AL in the present action and BMW FS's activities in Florida constituted infringement of the '180 patent, the exercise of personal jurisdiction over BMW AL would still be inconsistent with the requirements of the Due Process Clause of the United States Constitution. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[14]  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Consistent with these principles, the Supreme Court has drawn a distinction between "specific" jurisdiction and "general"

---

[13] Due to the absence of evidence or even factual allegations to support a finding that BMW AL infringed or induced the infringement of the '180 patent in any manner within the Middle District of Florida, the Court need not reach the merits of the present patent infringement controversy in order to find that Digitech failed to establish personal jurisdiction under section 48.193(1)(b). *See Delong Equip. Co. v. Wash. Mills Abrasive Corp.*, 840 F.2d 843, 845 (11th Cir. 1988) ("[W]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version, particularly when the jurisdictional questions are apparently intertwined with the merits of the case." (quotation omitted)).

[14] "The constitutional touchstone of the due process inquiry remains whether the defendant purposefully established minimum contacts in the forum State." *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quotations omitted).

jurisdiction. To establish specific jurisdiction, a plaintiff must demonstrate that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp*, 471 U.S. at 472-73 (internal citations omitted).

In the present case, Digitech presents no factual allegations or evidence to support a finding that BMW AL purposefully directed any of its activities at residents of Florida. While Digitech repeats its conclusory assertions that "BMW [AL] clearly was acting in concert with BMW FS in connection with the securitization of lease-back notes, which is the subject of this infringement action," (Doc. 30 at 14), as previously discussed, this assertion is contradicted by the evidence of record. Similarly, Digitech's discussion of BMW AL's "nationwide securities offering," without more is insufficient to demonstrate that BMW AL purposefully directed its activities at residents of Florida. *See, e.g., 3D Sys. Inc.*, 160 F.3d at 1380 (finding that a nonresident defendant did not direct activities towards residents of the forum state by maintaining a website mentioning products of an allegedly infringing subsidiary and forwarding resulting email inquires to its subsidiary); *Faro Techs.*, 2006 WL 1119223, at *3 (holding that web sites at issue which merely referred to the accused devices without making them available for purchase are not directed toward residents of Florida). Additionally, there is no evidence of record to support a finding that any allegedly infringing activity arose out of or relates to BMW AL's nationwide offering of securities or some knowing inducement on the part of BMW AL. *Cf Kemin*, 654 F. Supp. 2d at 1336 (finding that a claim arose from the defendants' activities in the forum where the parent corporation designed, tested, and manufactured the allegedly infringing products and directed its subsidiary to send them to a specific customer in the Middle District of Florida). Accordingly, Digitech has not demonstrated that the exercise of specific

jurisdiction under section 48.193(1)(b) in this case would comport with the requirements of the Due Process Clause.

### B. Business Activity in Florida, Section 48.193(1)(a), Florida Statutes

Section 48.193(1)(a), Florida Statutes, provides for specific jurisdiction in Florida where the defendant personally or through an agent is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." "To invoke long arm jurisdiction under section 48.193(1)(a), the activities of the corporation 'must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Golant v. German Shepherd Dog Club of Am., Inc.*, 26 So. 3d 60, 63 (Fla. 4th DCA 2010) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975)); *see also Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1227 (M.D. Fla. 2000) *(*"In order to establish that a non-resident defendant is carrying on a business or business venture in Florida, the Court must consider whether the sum of the defendant's collective business activities shows a general course of business activity in the state for pecuniary benefit.").

In the present case, Digitech has offered no evidence or factual allegations to support a finding that BMW AL is or was operating, conducting, engaging in, or carrying on a business or business venture in Florida. Nor has Digitech offered any evidence or factual allegations to support a finding that BMW AL has an office or agency in Florida. Digitech's assertion that "BMW Auto Leasing's very name makes it obvious that it is involved in the role of leasing automobiles, nationwide and in the State of Florida," (Doc. 30 at 13), is wholly conclusory and contradicted by the evidence of record. *See Jasper v. Zara*, 595 So. 2d 1075, 1075-76 (Fla. 2d DCA 1992) (no personal jurisdiction where the plaintiff initially solicited the defendant in New York by phone and the defendant subsequently

communicated with the plaintiff and his accountant by telephone and letter over a period of 18 months). Moreover, as previously discussed, Digitech failed to make a *prima facie* showing that the actions of BMW FS may be attributed to BMW AL for purpose of establishing personal jurisdiction. *See Dev. Corp. of Palm Beach v. WBS Constr., L.L.C.*, 925 So. 2d 1156, 1161 (Fla. 4th DCA 2006) (finding that a parent corporation is not subject to jurisdiction in Florida under section 48.193(1) unless the parent exerts a very high level of control over the subsidiary). Accordingly, Digitech failed to make a *prima facie* showing that this Court may exercise specific personal jurisdiction over BMW AL.

## Conclusion

Based on the forgoing, BMW Auto Leasing, LLC's Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction (Doc. 26), is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on August 26th, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record