# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DIGITECH INFORMATION SYSTEMS, INC.,**

**Plaintiff,**

**-vs-**                                    **Case No.  6:10-cv-1373-Orl-28KRS**

**BMW FINANCIAL SERVICES NA, LLC,**

**Defendant.**

_____

# ORDER

This patent infringement controversy involves a business method patent owned by Plaintiff, Digitech Information Systems, Inc. ("Plaintiff") and allegedly infringed by Defendant, BMW Financial Services NA, LLC[1] ("Defendant").  Currently before the Court is Defendant's Motion for Summary Judgment as to Patent Invalidity (Doc.39), Plaintiff's Response (Doc. 40), and Defendant's Reply (Doc. 41).  As discussed below, Defendant's motion shall be granted.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When faced with a "properly supported motion for summary judgment,

_____

[1] BMW Auto Leasing LLC was originally also named as a Defendant in this case but was dismissed because this Court could not exercise personal jurisdiction over it.  (See Doc. 45).

[the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). However, the failure to respond and create a factual dispute by the nonmoving party "does not automatically authorize the entry of summary judgment for the moving party." Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985). "Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact." Id.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### The '180 Patent

Plaintiff's patent, United States Patent No. 7,739,180 ("the '180 Patent"), recites "[a] method for selecting leases to optimize an investment portfolio." (The '180 Patent, Doc. 1-1, at 23). Only claims one through eight are at issue in this case, (Pl.'s Resp., Doc. 40, at 2); claim one is an independent claim and claims two through eight are dependent thereon. (The '180 Patent at 23). The parties' arguments, therefore, center around claim one of the '180 Patent, which recites:

A method for selecting leases to optimize an investment portfolio comprising the steps of:

receiving data regarding an equipment purchase price, an equipment sales price, a number of units, a lease purchase price, a life of lease, a lease acquisition fee, an accelerated depreciation of change, and a yearly payment;

calculating by computer a total purchase price by adding the lease purchase price to the lease acquisition fee;

calculating by computer an accelerated depreciation result by multiplying the equipment purchase price by the number of units;

calculating by computer a rate of return by subtracting from the yearly payment the total purchase price and the accelerated depreciation result and dividing by the lease purchase price; and

selecting a lease based on the rate of return being greater or equal to a predetermined value and using the selected lease to create lease backed financial instrument derivatives and optimize the investment portfolio.

(Id.). The specification further describes a "two-tier investment strategy" whereby investors purchase equipment leases that are expected to generate high returns and then invest those returns in higher-risk investments–for example, start-up companies. (Id. at 17). The specification also explains that the method is "computer implemented" because of "the complexity" of the calculations. (Id. at 16).

## Analysis

Defendant argues that claims one through eight of the '180 Patent ("the claims at issue") are invalid because they do not claim patentable subject matter under 35 U.S.C. § 101. Plaintiff asserts that Defendant's motion is premature but that even if it is not, the claims at issue contain patentable subject matter and therefore Defendant's motion should be denied.

**I.  Ripeness**

Plaintiff argues that a decision as to invalidity under § 101 would be premature because the Court has not yet construed the claims at issue, because there are issues of fact, and because the Court should first address invalidity challenges under other sections of the Patent Act before addressing § 101.  Plaintiff's arguments are unavailing.

Plaintiff first asserts that this Court must conduct claim construction prior to any invalidity analysis.  While Plaintiff is correct that claim construction is the first step in an invalidity analysis if necessary, "claim construction may not always be necessary for a § 101 analysis."  Ultramercial, LLC v. Hulu, LLC, 657 F.3d 1323, 1325 (Fed. Cir. 2011).  In particular, when there are no disputed terms contained within the claims relevant to the issue of invalidity, no claim construction is necessary.  See id. (stating that "the subject matter at stake and its eligibility [did] not require claim construction"); see also Bilski v. Kappos, 130 S. Ct. 3218, 3231 (2010) (determining patent invalidity without conducting claim construction).

The only term Plaintiff mentions in the context of its claim construction argument is "computer."  Plaintiff makes the vague statement that the issue of whether the computer recited in claim one meets the machine-or-transformation test (discussed below) "begs" for claim construction.  Plaintiff, however, offers no construction of "computer" beyond its plain and ordinary meaning.  Accordingly, no claim construction is necessary at this time to resolve the issue currently before the Court.

Next, Plaintiff asserts that the determination of whether a patent claim is directed to statutory subject matter requires findings of fact and therefore summary judgment is

inappropriate.  As with its claim construction argument, however, Plaintiff fails to identify any issues of fact that would impede a decision on Defendant's § 101 invalidity argument. Rather, Plaintiff summarily cites Arrhythmia Research Technology, Inc. v. Corazonix Corp., 958 F.2d 1053, (Fed. Cir. 1992), for the proposition that findings of fact must occur in order to determine invalidity under § 101.  Plaintiff misconstrues Arrhythmia.  Far from holding that all questions of patent invalidity under § 101 *require* findings of fact, the Arrhythmia court merely noted that such questions "*may* require findings of underlying facts specific to the particular subject matter and its mode of claiming." Id. at 1055-56 (emphasis added).  In the very next sentence, however, the court went on to say that in the case before it no findings of fact were necessary because "there were no disputed facts material to the [§ 101] issue." Id. at 1056.

Just as in Arrhythmia, there are no disputed facts material to the issue of whether the '180 Patent contains patent-eligible subject matter.  The only supposed issue of fact that Plaintiff even alludes to is that it needs "discovery" and "expert reports" regarding the same issue on which it asserted it needed claim construction–whether the computer satisfies the machine-or-transformation test.  Plaintiff, however, fails to explain what factual issues it needs to address through discovery.  Additionally, the machine-or-transformation test is a tool used to determine whether a claim states patent-eligible subject matter under § 101, and "[i]ssues of patent-eligible subject matter are questions of law." Cybersource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1369 (Fed. Cir. 2011).

Finally, Plaintiff asserts that this Court cannot consider Defendant's § 101 challenge until it first considers all of Defendant's invalidity challenges under other sections of the

Patent Act.  It is true that recent cases from the Federal Circuit have indicated that given the opportunity, district courts should consider other invalidity arguments prior to § 101 challenges because the other sections, unlike § 101, set forth "criteria [that] are well developed and generally well understood." Myspace, Inc. v. Graphon Corp., No. 2011-1149, 2012 WL 716435, at *7 (Fed. Cir. Mar. 2, 2012); see also Dealertrack, Inc. v. Huber, Nos. 2009-1566 & 2009-1588, 2012 WL 164439, at *18-19 (Fed. Cir. Jan. 20, 2012) (Plager, J., dissenting).  Courts are not, however, required to address other invalidity arguments prior to addressing a § 101 argument.  Myspace, 2012 WL 716435, at *8.  Moreover, in the cases where the Federal Circuit suggested that district courts address other invalidity arguments first, there were pending motions for summary judgment regarding such arguments.  Id. at *4; Dealertrack, 2012 WL 164439, at *18.  There are no other pending motions for summary judgment in this case; surely Plaintiff is not suggesting that this Court order Defendants to file a motion for summary judgment challenging the '180 Patent on other grounds.

## II.  Invalidity

Defendant asserts that the claims at issue recite an abstract idea and are, therefore, invalid under § 101.  Plaintiff, on the other hand, argues that the claims at issue recite a valid business method patent, which is a patentable process.  "A patent is presumed valid and the party asserting invalidity has the burden of persuasion to show the contrary by clear and convincing evidence."  Research Corp. Techs., Inc. v. Microsoft Corp., 627 F.3d 859, 870 (Fed. Cir. 2010).

"Section 101 defines the subject matter that may be patented under the Patent Act . . . [and] specifies four independent categories of inventions or discoveries that are eligible

for protection: processes, machines, manufactures, and compositions of matter." <u>Bilski</u>, 130 S. Ct. at 3225.  Although § 101 has been interpreted broadly so that "'the patent laws would be given wide scope[,] . . . [t]he [Supreme] Court's precedents provide three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" <u>Id.</u> (quoting <u>Diamond v. Chakrabarty</u>, 447 U.S. 303, 309 (1980)).  The crucial question in this case is whether the claims at issue recite an abstract idea.  Although not conclusive, the machine-or-transformation test implemented by the Federal Circuit is an "important and useful" tool to help determine whether a patent claims an abstract idea or a patentable process.  <u>Id.</u> at 3226.

### A.  The Machine-or-Transformation Test

Pursuant to the machine-or-transformation test, if a "claim is tied to a particular machine" or "transforms an article into a different state or thing" it is likely not an abstract idea and that therefore patent-eligible under § 101.  <u>In re Bilski</u>, 545 F.3d 943, 961-62 (Fed. Cir. 2008).  However, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility . . . [and] the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity."  <u>Id.</u>

### i.  Machine

Plaintiff asserts that the claims at issue are significantly tied to the use of a computer and therefore the machine prong of the machine-or-transformation test is satisfied.  For purposes of this test, the Federal Circuit has "defined a 'machine' as 'a concrete thing, consisting of parts, or of certain devices and combination of devices.  This includes every

mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result." SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1332 (Fed. Cir. 2010). Clearly, a computer qualifies as a "machine." This does not end the inquiry, however. As noted above, "to impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine 'must impose meaningful limits on the claim's scope.'" Cybersource, 654 F.3d at 1375 (quoting In re Bilski, 545 F.3d at 961). "In other words," to satisfy the "machine" prong, "the machine 'must play a significant part in permitting the claimed method to be performed.'" Id. (quoting SiRF Tech., 601 F.3d at 1333). Furthermore, "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test." Id. This is precisely what the claims at issue do.

In the claims themselves, the only reference to a computer is that the calculations are done "by computer."[2] ('180 Patent at 23). Additionally, the specification states: "Due to the complexity of evaluating hundreds and thousands of leases to determine specific leases to be bought and sold, establishing buying and selling parameters, and then using these derivatives to construct a portfolio, we have proposed our new algorithm and methodology to be computer implemented." (Id. at 16). Other parts of the specification simply reference

---

[2] Only claim one specifically references the use of a computer, but claims two through eight are dependent on claim one and therefore the use of a computer is inferred.

the claimed method as a "computer-implemented process."[3]  (See, e.g., id. at 17).  The

claims fail to "specify how the computer hardware and database are specially programmed

to perform the steps claimed in the patent," and they "are silent as to how a computer aids

the method, . . . or the significance of a computer to the performance of the method."

Dealertrack, 2012 WL 164439, at *17 (quotation omitted).  Moreover, simply incorporating

terms such as "computer aided" or "software implemented" does nothing to make the claims

less abstract and does not satisfy the machine prong.  Id.; Cybersource, 654 F.3d at 1375.

Even if the calculations claimed in the method are more easily done by a computer or are

"'primarily useful for computerized [applications],' [if they] could still 'be made [using a] pencil

and paper'" then they are merely a mental process, which is not patent-eligible.

Cybersource, 654 F.3d at 1371 (quoting Parker v. Flook, 437 U.S. 584, 586 (1978) (first and

third alteration in original)).

When the claims here are compared to those in SiRF, it becomes clearer that the

claims at issue fail the machine prong.  In SiRF, the patent-in-suit claimed "a method for

calculating an absolute position of a GPS receiver and an absolute time of reception of

satellite signals."  601 F.3d at 1331.  The SiRF court found that the GPS receiver satisfied

the machine prong because "the methods at issue could not be performed without the use

of a GPS receiver."  Id. at 1332.  Plaintiff does not even argue that the calculations in the

claims at issue could not be done without the use of a computer.  Furthermore, the method

in SiRF required the measurement of an "absolute position" and "'pseudoranges' that

_____

   [3] Plaintiff also cites the deposition of Deepak Gulati, President of Digitech, for support, but that deposition merely references the specification of the '180 Patent.  (Doc. 40-8 at 1).

estimate the distance from 'the GPS receiver to a plurality of GPS satellites.'" <u>Id.</u>  Such calculations and measurements could not be performed by mere human mental processes; a GPS was required.  Unlike the claims in <u>SiRF</u>, however, there is no indication in the '180 Patent that the calculations could not be done without the use of a computer.  Accordingly, the claims at issue do not meet the machine prong of the machine-or-transformation test.

### ii.  Transformation

Under the transformation prong of the machine-or-transformation test, "[a] claimed process is patent-eligible if it transforms an article into a different state or thing" and the transformation is "central to the purpose of the claimed process."  <u>In re Bilski</u>, 545 F.3d at 962.  Clearly, "a process for a chemical or physical transformation of physical objects or substances is patent-eligible subject matter."  <u>Id.</u> (emphasis omitted).  Additionally, "the electronic transformation of . . . data itself into a visual depiction" is patent-eligible so long as "the claim is limited to a visual depiction that represents specific physical objects or substances."  <u>Id.</u> at 963 (citing <u>In re Abele</u>, 684 F.2d 902 (C.C.P.A. 1982)).  On the other hand, neither data-gathering steps nor "manipulations . . . of public or private legal obligations or relationships, business risks, or other such abstractions" are sufficient to satisfy the transformation prong.  <u>Id.</u>

Plaintiff asserts that claims one through eight satisfy the transformation prong of the machine-or-transformation test because they require the selection of leases and the creation of new lease-backed financial instrument derivatives.  As an initial matter, Plaintiff fails to explain what "article" is "transformed" by selecting leases or creating lease-backed securities.  The step of selecting leases merely requires data-gathering, mathematical

calculations, and making a transaction; this is insufficient to constitute a transformation.  See id. at 963, 965 (noting that "adding a data-gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process" and further noting that just because a claim requires "identified transactions actually to be made" or "a decision to actually be rendered" does not mean the claims "achieve any eligible transformation" (citing In re Comiskey, 499 F.3d 1365 (Fed. Cir. 2007))).  Moreover, creating lease-backed financial derivatives transforms nothing more than "legal obligations or relationships, business risks, or other such abstractions" and also does not satisfy the transformation prong.  Accordingly, the claims at issue do not meet the transformation prong of the machine-or-transformation test.

### B.  Abstract Idea

While the fact that the claims at issue do not satisfy the machine-or-transformation test is a good indicator that they do not claim patent-eligible subject matter, it is not dispositive.  The Court must still determine if, despite not satisfying the test, the claims are otherwise patent-eligible.  They are not.

In fact, the claims at issue are strikingly similar to those at issue in Bilski, which the Supreme Court unanimously determined were not patent-eligible.  130 S. Ct. at 3231.  In Bilski, "[t]he patent application [at issue] claim[ed] a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations in a discrete section of the economy."  Id. at 3223.  The patent examiner rejected the application because it "merely manipulat[ed] [an] abstract idea."  Id. at 3224.  The Federal Circuit applied the machine-or-transformation test and agreed that the application was not eligible for patent protection.  Id.

Although the Supreme Court rejected the notion that the machine-or-transformation test was the exclusive test to determine patentability under § 101, it agreed with both the Federal Circuit and the patent examiner that the claims were "not patentable processes because they [were] attempts to patent abstract ideas." Id. at 3229-30. The Supreme Court relied on its prior precedent addressing whether patents contained claims for "processes" under § 101–Diamond v. Diehr, 450 U.S. 175 (1981); Parker v. Flook, 437 U.S. 584 (1978); and Gottschalk v. Benson, 409 U.S. 63 (1972). Id. at 3230.

In Benson, the Supreme Court determined that "a patent application for an algorithm to convert binary-coded decimal numerals into pure binary code" was not a "process" under § 101 but rather an abstract idea. Id. (citing Benson, 409 U.S. at 64-67). The Benson Court then went on to explain that the "practical effect" of allowing such a patent would be to "wholly pre-empt the mathematical formula" and that algorithms themselves are abstract ideas that cannot be patented. Benson, 409 U.S. at 71-72. "In Flook, the [Supreme] Court considered the next logical step after Benson. The applicant there attempted to patent a procedure for monitoring the conditions during the catalytic conversion process in the petrochemical and oil-refining industries." Bilski, 130 S. Ct. at 3230 (citing Flook, 437 U.S. at 585-86). The Flook Court held that even though the application limited the use of the algorithm to the petrochemical and oil-refining industries–and therefore did not "seek to 'wholly preempt the mathematical formula'"–the limitation was merely a "post-solution activity" that could not "transform an unpatentable principle into a patentable process." Flook, 437 U.S. at 589-90 (quoting Benson, 409 U.S. at 71-72).

"Finally, in Diehr, the Court established a limitation on the principles articulated in

-12-

Benson and Flook.  The application in Diehr claimed a previously unknown method for 'molding raw, uncured synthetic rubber into cured precision products,' using a mathematical formula to complete some of its several steps by way of a computer."  Bilski, 130 S. Ct. at 3230 (quoting Diehr, 450 U.S. at 177).  The Diehr Court determined that the patent application before it was different from those in Benson and Flook because the application in Diehr contained  "an *application* of a . . . mathematical formula to a known . . . process." Diehr, 450 U.S. at 187 (emphasis in original).  In other words, the mathematical formula in Diehr was merely used in a larger process to mold synthetic rubber–a process that contained other steps that imposed significant limits on the scope of the claim beyond mere post-solution activity.

"In light of these precedents," the Bilski Court determined that it was "clear that [the application at issue was] not a patentable 'process.'"  Bilski, 130 S. Ct. at 3231.  This was because "[t]he concept of hedging, described in claim 1 [of the patent application] and reduced to a mathematical formula in claim 4 . . . would pre-empt use of this approach in all fields" like the claims in Benson, and the post-solution limitation of using hedging in commodities and energy markets provided in the remaining Bilski claims was insufficient under Flook.  Bilski, 130 S. Ct. at 3231.

Like the claims in Bilski, the claims at issue in this case recite an abstract idea.  Claim one of the '180 Patent contains five separate steps.  Steps two, three, and four merely state mathematical formulas; step one involves data-gathering; and step five requires a decision to be rendered based on the data and mathematical formulas.  These steps do not require the application of the mathematical formulas to a known process like the claims in Diehr;

rather, they seek to preempt the use of the formulas in all fields like the claims in <u>Bilski</u>. Furthermore, the post-solution activity of limiting the use of the formulas to a "venture capital environment, private equity, public equity, and/or debt instruments" recited in claim eight, ('180 Patent at 23), is insufficient under <u>Flook</u> to render that claim patent-eligible.  The other dependent claims merely adjust the mathematical formulas and also do not make any claim patent-eligible.

In sum, the claims at issue fail the machine-or-transformation test and otherwise claim an abstract idea.  Accordingly, those claims are not eligible for patent protection under § 101.

## Conclusion

In accordance with the foregoing, Defendant's Motion for Summary Judgment as to Patent Invalidity (Doc.39) is **GRANTED**.  All other motions currently pending in this case are **DENIED as moot**.  The Clerk is directed to enter judgment in favor of Defendant and close this case thereafter.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 30th day of March, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

-14-